UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 13-CR-662 RS |
| Plaintiff, | |
| v. | DETENTION ORDER |
| HOWARD WEBBER, | |
| Defendant. | |

On October 3, 2013, Defendant Howard Webber and a co-defendant were charged by federal indictment with mail fraud and aggravated identity theft arising from an alleged scheme to file fraudulent federal income tax returns on behalf of various prison inmates. Mr. Webber subsequently waived findings as to detention, and was remanded to custody. (Dkt. No. 20.) By Order filed June 3, 2014, the district court dismissed the aggravated identity theft counts on the grounds that a defendant who uses another person's identity with that person's consent is not guilty under the governing statute. (Dkt. No. 53.) The government appealed and that appeal is still pending.

In the meantime, Mr. Webber remained in custody. In January 2015, Mr. Webber moved for his release, arguing in part that there is a concern that should the government's appeal be denied, Mr. Webber may serve more custodial time pretrial than he could be sentenced to under the remaining

1

counts, assuming he is convicted.  By order filed January 22, 2015, the Court released Mr. Webber to a halfway house upon his posting over $23,000 in cash that he had recently received as an inheritance.  (Dkt. No. 74.)  The Court found that his residence at the halfway house, essentially on lock down status, coupled with the cash bond, were sufficient to assure his appearance as required in Court and sufficiently mitigated any danger to the community.

On Monday, March 12, 2015, Mr. Webber was expelled from the halfway for throwing juice at an employee and using a racial epithet.  He appeared in court that day before the duty magistrate judge, and was released to reside at the home of the mother of his child, Ms. Mayra Parl, and placed on electronic monitoring.  Ms. Parl did not sign on to the modified bond.  Mr. Webber was also ordered to appear before the undersigned judge on April 2, 2015.

The government subsequently moved to revoke Mr. Webber's bond.  (Dkt. No. 98.)  The government argues, among other things, that he is an economic danger because it appears that he has been soliciting money from third parties based on false, or at least inflated, pretenses.  It is also concerned that Mr. Webber has access to more money than previously disclosed and that therefore he is flight risk, especially in light of his past conduct in Wisconsin.

The government also brought to the Court's attention that in January 2015, Mr. Webber (on his own and not through counsel) filed various pleadings with the court accusing Ms. Parl, the person with whom he was released to reside following his expulsion from the halfway house, of various crimes.  For example, in his motion for disclosure of "other Bad Acts, Wrong Acts or any other crimes pursuant to 404(b)" he states that he knows of other crimes by Ms. Parl.  (Dkt. No. 80 at 1.)  In a motion for release reconsideration filed the same day, he represented that he "has been a victim of theft from Witness Mayra Parl," and that "Parl also defrauds and stold [sic] money from 4 other victims."  (Dkt. No. 83 at 4.)  Finally, in his motion to sever, also filed the same day, Mr. Webber writes that he is a "victim of fraud and theft from co-defendant Bercovich and witness Mayra Parl.  Parl also defrauds 4 other people and was sued in civil court.  Webber knows other crimes Bercovich and Parl created and also stold and defrauds Webber and forged his name on his pay checks. . . . Parl also commit[t]ed crimes with Carol Kimball against me and insurance companys."  (Dkt. No. 75 at 1.)

In light of the above, the Court is not comfortable with releasing Mr. Webber to reside with Ms.

Parl, until pretrial services has an opportunity to again interview Ms. Parl.  While Ms. Parl had indicated to pretrial services that Mr. Webber could live with her, the Court wants to ensure that she is aware of Mr. Webber's recent accusations.  There is also the issue of whether she is willing to serve as a custodian or surety, especially since she appears to own a home with Mr. Webber.  The Court's concern is heightened by Mr. Webber's criminal record, which includes arrests and a conviction for threatening with intent to terrorize.   As Mr. Webber was expelled from the halfway house, the Court remanded Mr. Webber and continued the matter to April 16, 2015 to allow time for further investigation.

While the Court has concerns about the "economic danger" posed by Mr. Webber's recent conduct involving the Mount Madonna Inn, that concern is not the basis for the Court's remand order; instead, as explained above, it is based on the Court's concern with whether it is appropriate for Mr. Webber to reside with Ms. Parl given his recent written accusations against her.  The Court is prepared to address the government's other concerns at the April 16, 2015 hearing, should Mr. Webber still wish to be released to Ms. Parl's residence or propose some other option and set of conditions.  The Court also notes that it has not found, nor should its order be construed as a finding, that Mr. Webber violated the conditions of his release.

**IT IS SO ORDERED.**

Dated: April 3, 2015

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE